**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KURT SCHEUERMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLE HEALTHCARE NUTRITION, INC.,<br><br>Defendant. | Hon. Faith S. Hochberg, U.S.D.J.<br><br>Civil Case No. 10-3684 (FSH)(PS)<br><br>**OPINION**<br><br>Date: July 16, 2012 |
| MARIA JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLE HEALTHCARE NUTRITION, INC.,<br><br>Defendant. | Hon. Faith S. Hochberg, U.S.D.J.<br><br>Civil Case No. 10-5628 (FSH)(PS)<br><br>**OPINION**<br><br>Date: July 16, 2012 |

**HOCHBERG, District Judge;**

This matter comes before the Court upon Defendant Nestle Healthcare Nutrition, Inc.'s

("Nestle") motion to dismiss portions of the Amended Consolidated Class Action Complaint

pursuant to Fed. R. Civ. P. 12(b)(6), Nestle's Motion for Summary Judgment filed pursuant to

Fed. R. Civ. P. 56 and Local Civil Rule 56.1, and Plaintiffs' Motion for Class Certification. The

Court has reviewed the submissions of the parties and heard oral argument on June 6, 2012.

1

## I.   **BACKGROUND**[1]

Plaintiffs Maria Johnson and Kurt Scheuerman bring this action against Nestle

individually and on behalf of others similarly situated and invoke the Court's jurisdiction

pursuant to the Class Action Fairness Doctrine ("CAFA"), 28 U.S.C. § 1332(d)(2). This action

arises out of Plaintiffs' purchase of the Nestle product BOOST Kid Essentials ("BKE"), a drink

promoted as having a variety of health benefits for children.

Nestle began marketing BKE in August 2008 and began selling it in September 2008. At

this time, BKE was sold to the public in a carton with a separately packaged straw, which

contained the probiotic, *Lactobacillus reuteri Protectis* ["LRP"]. Defendant's Statement of

Undisputed Facts ("Def.'s 56.1 Stmt.") ¶ 2. Plaintiffs are parents who purchased BKE for their

children based on these purported health benefits.

The Amended Consolidated Class Action Complaint (the "Complaint") alleges that

Nestle falsely promoted BKE in a variety of media outlets to both parents and children as having

"clinically shown" health benefits for children. Compl. ¶ 21. Plaintiffs allege that Nestle's

"clinically shown" health benefit claims were deceptive and misleading because they were made

"without any reasonable basis for doing so and without substantiating them." Compl. ¶ 3.

Plaintiffs allege that Nestle expressly or impliedly claimed that BKE, *inter alia*:

   a.  Prevents upper respiratory tract infections in children,
   b.  Provides "Immunity Protection,"
   c.  Is a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy,"
   d.  Strengthens the immune system,
   e.  Protects against cold and flu viruses,[2]

---

[1] The Court presumes familiarity with the facts, as set forth in its August 1, 2011 Opinion & Order (the "August 1 Order") which granted in part and denied in part Nestle's motion to dismiss the original Consolidated Class Action Complaint. Because Plaintiffs' factual allegations are largely unchanged, this section draws heavily upon the August 1 Order.

  f. Reduced the duration of diarrhea, and that

  g. BOOST actually reduces absences from daycare or school due to illness.

Compl. ¶ 2. Plaintiffs allege that Nestle "misrepresent[ed] expressly and impliedly to its customers that [BKE] was clinically shown to and would have the health benefits mentioned above," when Nestle "did not possess or rely upon any reasonable basis that substantiated these purported health benefits." Compl. ¶ 8.

  Nestle's made "clinically shown" health benefit claims related to BKE in certain marketing materials:  Nestle ran a "Straw Power" commercial, which aired intermittently from January 4, 2009 through April 11, 2009 and in a shorter version from April 26, 2009 through June 7, 2009.  Def.'s 56.1 Stmt. ¶ 14.  This commercial included text on the screen and/or voiceover stating: (1) "[LRP] has been clinically shown to help strengthen the immune system when consumed daily;" (2) "Probiotic straw / Clinically shown to help strengthen the immune system;" and (3) ". . . and probiotics clinically shown to help strengthen the immune system." Compl. Ex. C.[3,4]

  A January 8, 2009 press release announcing the launch of BKE stated that "[p]robiotics delivered through the [BKE] straw, have been clinically shown to help strengthen the immune

---

[2] It is undisputed that Nestle never actually used the words "upper respiratory tract infection," "cold," or "flu" in BKE labels or marketing and advertising materials.  Def.'s 56.1 Stmt. ¶ 19.

[3] Nestle ran a second television commercial, entitled "Kid Essentials Taste Challenge," which aired intermittently from September 6, 2009 through November 21, 2009, and from January 17, 2010 through May 15, 2010.  Def.'s 56.1 Stmt. ¶ 16.  This commercial focused on the taste of BKE as compared to its competitor Pediasure and Plaintiffs do not claim that this commercial made any "clinically shown" health benefit claims.  *Id.* ¶ 17.

[4] Nestle advertised BKE as providing immunity-related health benefits in other media; however, the only advertising and marketing statements relevant to Plaintiffs' claims are those in which Nestle claimed that BKE was "clinically shown" to confer certain health benefits.  *See* Plaintiffs' Memorandum of Law in Opposition to Nestle's Motion for Summary Judgment ("Pls.' SJ Opp. Br.") 1 ("Here, the consumer deception arises out of Nestle's efforts to convince consumers to purchase [BKE] to obtain 'clinically shown' 'immunity protection' for their children.").

system to keep kids healthy." Plaintiffs' Counterstatement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Pls.' 56.1 Counterstatement") ¶ 8.

From September 2008 to January 2009, the FAQ section of Nestle's website stated: "[LRP] (the probiotic found in [BKE] Drink) has been shown to reduce the diarrheal illness in children and reduce the number of days infants miss daycare due to illness. Pls.' 56.1 Counterstatement ¶ 9; Defendant's Response to Plaintiffs' Counterstatement of Material Facts ("Def.'s Resp. to Pls.' 56.1 Counterstatement") ¶ 9. Nestle also made "clinically shown" health benefit claims in marketing materials that it prepared exclusively for healthcare practitioners, which were neither disseminated to customers nor seen by Plaintiffs. Def.'s Resp. to Pls.' 56.1 Counterstatement ¶ 2.

The BKE label represented that the product provided "immunity protection," was a "nutritionally complete drink" containing probiotics and included a "patented probiotic straw." Compl. ¶¶ 27-28. Plaintiffs do not claim that the BKE label used the words "clinically shown."[5]

Plaintiff Johnson purchased BKE for her children from sometime in 2008 through sometime in 2010. Plaintiff Scheuerman purchased BKE for his children from the fall of 2008 through the summer of 2010. Pls.' 56.1 Counterstatement ¶¶ 27, 32, 34, 39. During the time period that their children consumed BKE, Plaintiffs neither monitored nor tracked their children's health and cannot recall any specific instances of cold, flu, upper respiratory tract

---

[5] Critically, Plaintiffs' claims are based only on Nestle's use of the term "clinically shown" regarding the health benefits conferred by BKE. *See* Pls.' SJ Opp. Br. 18 ("Nestle claimed [BKE's] immunity protection was clinically shown without having the clinical results to make its advertisement truthful. This is the crux of Plaintiffs' claim . . . ."). In other words, Plaintiffs neither plead nor attempt to prove that BKE failed to provide any promised nutrition or health benefits; rather, they claim only that Nestle's advertising claim that BKE was "clinically shown" to confer certain health benefits was false because insufficient clinical support existed to substantiate that claim.

infection, diarrhea, or absences of school either before or after they began consuming BKE. Def.'s 56.1 Stmt. ¶¶ 29, 41.

On July 14, 2010, the Federal Trade Commission ("FTC") announced that it and Nestle had settled a lawsuit related to Nestle's representations about the benefits of BKE. The FTC alleged in its complaint that "clinical studies do not prove that drinking [BKE] reduces the general incidence of illness in children, including respiratory tract infections, reduces the duration of acute diarrhea in children up to the age of thirteen, strengths the immune system, thereby providing protection against cold and flu viruses." Compl. ¶ 37 (quoting from FTC Compl.). Accordingly, the FTC alleged that Nestle's representations "were, and are, false and misleading." *Id.*[6]

The consent order (which went into effect on January 12, 2011) the parties entered into to end the case directed Nestle to take the following steps over the course of the next 20 years: (1) not to make any representations that BKE "prevents or reduces the risk of upper respiratory tract infections, including, but not limited to, cold or flu viruses, unless the representation is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990;" (2) not to

---

[6] In the Complaint, Plaintiffs recite the allegations from the FTC Complaint, stating that "the FTC <u>concluded</u> that any such representations by Nestle 'were, and are, false and misleading.'" Compl. ¶ 37 (quoting FTC Compl.) (emphasis added). As Nestle points out, this assertion is disingenuous since the FTC does not come to any actual conclusions in a complaint. *See CEC Energy Co., Inc. v. Pub. Serv. Comm'n of the Virgin Islands*, 891 F.2d 1107, 1110 (3d Cir. 1989) (the "issuance of [an] FTC complaint averring reason to believe defendant violated [the FTC Act] is not a definitive position but a threshold determination that further inquiry is warranted, a prerequisite to a definitive position that defendant violated [the] Act.") (citing *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 241 (1980)). Plaintiffs' attempt to characterize the FTC's allegations as conclusions is an effort to bootstrap this action, which Plaintiffs conceded is an action brought as a class action to "piggyback" on an agency investigation.

Of course, the fact that a consumer class action is based on the actions of a government agency (such as the FTC), as opposed to the independent efforts of class counsel, is taken into account by courts when analyzing a fee award at the conclusion of the case. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165-66 (3d Cir. 2006).

make any representations that BKE "[r]educes the duration of acute diarrhea in children up to the age of thirteen; or reduces absences from daycare due to illness unless the representation is non-misleading and, at the time of making such representation, the respondent possesses and relies upon competent and reliable scientific evidence that substantiates that the representation is true;" and (3) not to "misrepresent, in any manner, expressly or by implication, the existence, contents, validity, results, conclusions, or interpretations of any test, study or research;" and (4) not to make an representations about the health performance, benefits, and efficacy of BKE unless based upon competent and reliable scientific evidence. Compl. ¶ 40 (quoting from the FTC Consent Order).

Plaintiff Maria Johnson filed suit against Nestle in this Court on July 22, 2010, eight days after the FTC announced its settlement with Nestle. Plaintiff Kurt Scheuerman filed suit in state court on September 26, 2010, and Nestle removed the action to this Court on October 28, 2010. On December 10, 2010, Plaintiffs filed the original Consolidated Class Action Complaint, alleging claims on behalf of a putative class under the New Jersey Consumer Fraud Act ("NJCFA") and for negligent misrepresentation and breach of warranty.

In the August 1 Order, the Court granted in part and denied in part Nestle's motion to dismiss the original complaint. The Court dismissed Plaintiff Johnson's NJCFA claim stating that she "may seek permission to amend her Complaint should she seek to assert a consumer fraud claim under California law." August 1 Order at 9. In denying Nestle's motion to dismiss as to Plaintiffs' other claims, the Court rejected Nestle's argument that Pennsylvania law should apply to Plaintiff Scheuerman's claims, finding that he had sufficiently alleged that he purchased BKE in New Jersey. *Id.* However, the Court gave Nestle permission to renew its application to

6

apply Pennsylvania law to Plaintiff Scheuerman's claims in an appropriately timed summary judgment motion. *Id.*

On September 23, 2011, with the Court's permission, Plaintiffs filed the Amended Consolidated Class Action Complaint, which adds claims on behalf of Plaintiff Johnson under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. §§ 1750 *et seq.*; and a claim on behalf of Plaintiff Scheuerman under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq.*  In addition to adding these new claims, the Complaint corrects the date on which Plaintiff Scheuerman allegedly purchased BKE. Otherwise, the factual allegations in the new Complaint do not differ from those in the original complaint.

Nestle has moved to dismiss the Plaintiffs' NJCFA (Count I), UCL (Count IV), FAL (Count V), CLRA (Count VI), and UTPCPL (Count VII) claims only, and has moved for summary judgment on all claims.

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but

7

instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

**B.**     **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter,

8

but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

III.   **DISCUSSION**

Nestle argues that Plaintiffs' NJCFA, UCL, FAL, and CLRA claims should be dismissed or adjudged because they are each, essentially, "prior substantiation" claims, which are not cognizable under those consumer fraud statutes.  According to Nestle, Plaintiffs merely allege that Nestle made claims in advertising, marketing, and packaging materials regarding the health benefits of BKE that it cannot substantiate.  Because none of the above-listed state consumer statutes countenance a claim based on lack of prior substantiation, Nestle argues, Plaintiffs' claims must be dismissed.[7]  Plaintiffs contend that they do not raise prior substantiation claims, but rather claim that Nestle made an affirmatively false statement regarding BKE when it advertised that it was "clinically shown" to provide certain health benefits.  In other words, Plaintiffs argue that their claims are not based on Nestle touting certain health benefits that it could not substantiate, but are rather based on Nestle's statement that BKE was "clinically shown" to confer certain health benefits on consumers, when there was insufficient clinical substantiation to support those advertising claims.  It is the use of the term "clinically shown," Plaintiffs argue, that constitutes a false or misleading advertising claim.

Nestle argues that even if Plaintiffs' claims are not barred by the prior substantiation doctrine, Nestle is entitled to summary judgment because Plaintiffs have not demonstrated and cannot demonstrate that Nestle's "clinically shown" advertising claims are false or misleading.  Additionally, Nestle argues that Plaintiffs have failed to raise triable issues as to other elements

---

[7] Plaintiffs take the position that Nestle's "prior substantiation" argument should have been raised, but was not, in its original motion to dismiss.  However, Plaintiffs do not actually argue that Nestle has waived such an argument, nor do they cite any legal authority supporting a finding of waiver.  Although Nestle certainly could have made this argument in its original motion to dismiss, it is entitled to make the argument in support of the instant motion for summary judgment and the motion to dismiss the Amended Complaint, which supersedes the prior complaint.  *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232 n.6 (M.D. Pa. 2010); *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006).

of their consumer fraud claims. Plaintiffs contend that their experts' opinions create a genuine

dispute as to whether the clinical support relied upon by Nestle in making its "clinically shown"

advertising claims is insufficient, thereby rendering that claim false and/or misleading.

Finally, Nestle argues that Plaintiffs' UTPCPL claim should be dismissed because the

Court's ruling on August 1, 2011 that New Jersey law applies to Plaintiff Scheuerman's

consumer fraud claim became the law of the case. Plaintiffs' argue that the August 1 Order

found that New Jersey law applies to Plaintiff Scheuerman's claims based on his purchases in

New Jersey, but "implicitly held that Mr. Scheuerman may allege violations of Pennsylvania

statutory law for purchases he made in Pennsylvania." Plaintiffs' Memorandum of Law in

Opposition to Nestle's Motion to Dismiss ("Pls.' MTD Opp. Br.") 11.

### A.   **False Advertising and Consumer Fraud Claims**

#### 1.   **Legal Elements**

To establish entitlement to relief under the NJCFA, a plaintiff must plead and prove

unlawful conduct, ascertainable loss, and a causal relationship between the two. *Int'l Union of*

*Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007).

The NJCFA provides that the prohibited unlawful conduct includes:

> [t]he act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false promise, misrepresentation, or the knowing
> concealment, suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in connection with the sale
> or advertisement of any merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not any person has in fact
> been misled, deceived or damaged thereby . . . .

N.J.S.A. § 56:8-2. Unlawful practices under the NJCFA fall into three general categories:

affirmative acts, knowing omissions, and regulation violations. *Frederico v. Home Depot*, 507

F.3d 188, 202 (3d Cir. 2007). Here, Plaintiffs claim that Nestle has affirmatively made a false or

11

misleading advertising claim—which is essentially a claim that Nestle claimed that it had clinically shown results when those results could not be substantiated.

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The CLRA generally prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . ." Cal. Civ. Code § 1770. The FAL prohibits the making or dissemination of any statement that is "untrue or misleading, and which is known, or by exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

Each of these statutes prohibits advertising which is either actually false or which, if literally true, is misleading. *See Stanley*, 2012 WL 1132920, at *3; *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011); *Fraker*, 2009 WL 5865687, at *6-7.

### 2.    Prior Substantiation

The parties vigorously disagree over what forms the basis of Plaintiffs' consumer fraud claims. According to Nestle, "Plaintiffs' entire Complaint rests on the single premise that Nestle cannot substantiate the advertising claims that it made about BKE and which Plaintiffs now challenge." Def.'s MTD Mot. Br. 11. According to Plaintiffs, the basis of their claims is that Nestle's claim that "it was clinically shown that [BKE] provided [certain] health benefits" was "a false statement of fact about the world," because no such clinical support exists. Pls.' MTD Opp. Br. 6.

As an initial matter, the case law is clear—and Plaintiffs do not dispute—that prior substantiation claims are not cognizable under the NJCFA, UCL, FAL, or CLRA. *See Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 128 (3d Cir. 2010) ("a New Jersey Consumer Fraud Act claim cannot be premised on a prior substantiation theory of liability"); *Stanley v. Bayer Healthcare LLC*, No. 11-862, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (granting

12

defendant's motion for summary judgment on plaintiff's CLRA and UCL claims and finding that

under California law, only prosecuting authorities—not private individuals—can bring an action

for lack of substantiation); *Chavez v. Nestle USA, Inc.*, No. 09-9192, 2011 WL 2150128, at *5

(C.D. Cal. May 19, 2011) ("Plaintiffs' allegations regarding a lack of substantiation for

Defendant's product claims (as alleged here) cannot support a cause of action under the UCL or

the FAL"); *Fraker v. Bayer Corp.*, No. 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6,

2009) (dismissing UCL, FAL, and CLRA claims because "there is no private remedy for

unsubstantiated advertising" and explaining that in order to maintain a false advertising action,

"Plaintiff will be required to adduce evidence sufficient to present to a jury to show that

Defendant's advertising claims with respect to the Product are actually false; not simply that they

are not backed up by scientific evidence"); Pls.' MTD Opp. Br. 5 ("Such [prior substantiation]

claims are not cognizable under the NJCFA because they do not allege that anything a defendant

said is false."); Pls.' SJ Opp. Br. 16-17 ("In certain circumstances, prior substantiation claims are

not actionable under consumer fraud statutes because they do not allege that anything a

defendant advertised is false.").

Despite Plaintiffs' arguments otherwise, which this Court has taken the time to seriously

analyze, the core allegations of fraud in the Complaint are clearly grounded in a prior

substantiation theory of liability. *See e.g.*, Compl. ¶¶ 3 & 26 ("Defendants made these bold

claims in advertisements and on the product containers, without any reasonable basis for doing

so and without substantiating them."); ¶ 4 ("Nestle did not, and does not possess the requisite

substantiation for these purported health claims"); ¶ 8 ("Defendants did not possess or rely upon

any reasonable basis that substantiated these purported health benefits"); ¶ 33 ("Defendants made

these claims in advertisements without any support for these claims based on competent and

reliable scientific evidence and/or without any basis in fact for doing so."); ¶ 60 ("Defendants violated the [NJ]CFA by dishonestly representing [BKE] provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants."); ¶ 87 ("Defendants also violated the UCL by fraudulently and unfairly representing that [BKE] provides particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants and/or false."). Therefore, to the extent that plaintiffs' claims reduce to substantiation claims, those claims fail to demonstrate entitlement to relief.

### 3. False or Misleading Statement

Plaintiffs attempt to transform what is essentially a prior substantiation claim into a consumer fraud claim by arguing that Nestle's use of the words "clinically shown" constitutes a false and misleading statement. In order to demonstrate this, Plaintiffs must plead and prove that Nestle lacked clinical support for the health benefits that it attributed to LRP, the probiotic present in the BKE straw. It is Plaintiffs' burden to affirmatively prove that the "clinically shown" BKE advertising claim is a false or misleading statement and not merely one that is unsubstantiated. *See Stanley*, 2012 WL 1132920, at *3 (citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmas., Inc.*, 107 Cal. App. 4th 1336, 1342 (Cal. Ct. App. 2003)). However, after conducting lengthy discovery and submitting opinions of three experts, Plaintiff has failed to adduce evidence sufficient to create a genuine issue of material fact that Nestle's "clinically shown" advertising claims were false or misleading. Rather, Plaintiffs' experts and its other facts all boil down to a claim that Nestle's scientific support underlying its claim of "clinically shown" health benefits is not as strong as it should be and do not substantiate those claims. This limitation was foreshadowed in the Complaint where Plaintiffs alleged that the "studies cited by Defendants on Nestle's website . . . were not as conclusive as represented by

14

Defendants." Compl. ¶ 30. At best, Plaintiffs can prove that Nestle's studies were not sufficiently strong; while this may be enough to make out an ordinary claim not premised on a theory of fraud, it is insufficient to demonstrate entitlement to relief under the consumer fraud statutes cited above.

Nestle has produced over forty scientific articles and studies that it contends provide the required substantiation for its "clinically shown" advertising claims.[8] *See* Declaration of Geoffrey Castello ("Castello Decl."), Ex. U.; Def.'s 56.1 Stmt. ¶ 44. While Plaintiffs' experts take issue with the strength and significance of these studies, their criticisms do not satisfy Plaintiffs' burden of demonstrating that the "clinically shown" advertising claims are false or misleading.

While one of Plaintiffs' experts, Dr. Marc Meyers,[9] opines that "[t]here is no evidence presented by Nestle that clearly shows that [BKE] was clinically shown to provide any of the claimed benefits," his report does not actually provide the factual basis to support such a conclusion. Expert Report of Marc. A Meyers, Ph.D. ("Meyers Report"), Castello Decl., Ex. E at 8. The experts relied on by Plaintiffs do not demonstrate that there is no scientific support for

---

[8] Plaintiffs have requested by letter that Exhibit U to the Castello Decl. should be excluded because it was not introduced by way of a declaration made on personal knowledge. First, Plaintiffs have not formally moved to strike this exhibit or to have it excluded. This Court considers parties' requests for action only by formal motion with citation to relevant case law and legal authority. Second, Nestle submitted with its reply brief the Declaration of Dr. Norman Greenberg, an in-house scientist, stating that the documents in Exhibit U were either produced by Nestle to the FTC during its investigation as substantiation material or were relied upon by Nestle's scientists in developing the BKE advertising claims. Plaintiffs do not argue that these studies were not actually relied upon by Nestle, nor do they argue that the Exhibit U documents were not produced during discovery, nor do they argue any actual prejudice resulting from the introduction of these documents as summary judgment exhibits by the Declaration of Mr. Castello. Accordingly, the Court takes no action with respect to Exhibit U.

[9] Dr. Meyers has a Ph.D. in Food Science and Packaging.

Nestle's "clinically shown" advertising claims. Rather, they offer criticisms[10] of the studies that

Nestle relies upon and conclude that: (1) "[t]here is <u>limited support</u> for a claim that the LPR

probiotic in [BKE] reduces the duration of diarrhea in symptomatic children up to 3 years of

age;" and (2) "[t]here is <u>limited support</u> for a claim the LRP probiotic in [BKE] can reduce

absences from day-care aged children." *Id.* at 9 (emphasis added). A demonstration of "limited

support" does not satisfy Plaintiffs' burden to prove falsity.[11]

Plaintiffs' other expert, Dr. John E. Fortunato, a medical school professor, offers his

rebuttal opinion that, with regard to the effectiveness of LRP, "[v]ery good basic science data has

been presented, but this must be translated to better ascertain its clinical application." Expert

---

[10] For example, in analyzing one of the over forty studies upon which Nestle relies, Dr. Meyers does not dispute that the study demonstrates that the parent strain of LRP had antimicrobial effects against bacterial pathogens. However, he opines that LRP's parent strain "was the least effective" of four strains studied, suggesting that this study constitutes "weak support" for Nestle's immunity-based advertising claims. Meyer Report, Castello Decl., Ex. E at 37. Once again, Plaintiffs cannot satisfy their burden to demonstrate that Nestle's claims were false or misleading by showing that some of the studies provide only weak support.

[11] Plaintiffs also contend that Nestle's "clinically shown" advertising claims are false or misleading because the scientific studies Nestle relies on for substantiation do not contain any clinical data on the efficacy in children of the specific strain of probiotic in the BKE straw. However, Plaintiffs have not demonstrated that the scientific results in the studies relied upon by Nestle do not apply to the LRP strain in the BKE straw. Merely pointing out that the effects of probiotics can be strain-specific does not prove Nestle's statement that LRP is "clinically shown" to confer certain health benefits to be false—which is the burden Plaintiffs must satisfy. First, Plaintiffs acknowledge that there is a study on LRP's (the BKE strain) immunity-related health benefits in adults, upon which Nestle relies. June 6, 2012 Transcript 81:15-82:4. Moreover, Nestle's expert, Dr. Merenstein, opines that the specific LRP strain in the BKE straw (LRP DSM 17938) and a strain studied in some of the scientific papers relied upon by Nestle (LRP ATCC 55730) "have been shown to be biologically nearly identical." Merenstein Rebuttal Report at 3, Castello Decl., Ex. H. Because in this class action proceeding it is not Nestle's burden to prove that its advertising claims are substantiated, but rather Plaintiffs' burden to prove the falsity of those claims, their argument regarding the LRP strains addressed by the scientific papers relied upon by Nestle does not amount to a demonstration that Nestle's advertising claims are false or misleading. Instead, this "strain specific" argument provides criticism of the degree of substantiation of the claim, which does not support a fraud claim, although it could conceivably support other types of legal claims. Neither side has devoted any real legal analysis to such other claims because it appears that the treble damage potential of the fraud claims has made them the true battleground of this action.

Report of John E. Fortunato, M.D. ("Fortunato Report"), Castello Decl. Ex. F at 11. Dr. Fortunato takes issue with the fact certain studies relied upon by Nestle demonstrate effectiveness of probiotics closely related to LRP only in children of certain ages and characteristics and therefore, the results do not necessarily demonstrate LRP's effectiveness across the entire BKE target market age range. *See id.*, at 9. The fact that Nestle relies upon studies that demonstrate LRP or similar probiotics' effectiveness in specific age groups does not render any of Nestle's advertising claims—which never indicated a specific age range (e.g., "[LRP] has been clinically shown to help strengthen the immune system when consumed daily," Compl. Ex. C)—false or misleading. The experts each opine about lack of sufficient substantiation when their opinions are read as a whole.

In sum, Plaintiffs do not present evidence that Nestle actually lacks scientific support for its "clinically shown" claims or that such support does not exist; they argue that this support should have been stronger. This is insufficient to satisfy Plaintiffs' burden to demonstrate that Nestle's "clinically shown" advertising claims "are actually false or misleading." *Stanley*, 2012 WL 1132920, at *9. Plaintiffs correctly argue that even if Nestle's "clinically shown" claims are literally true, Nestle can still be liable if they are misleading. However, this case is distinguishable from cased like *Smajlaj* where courts have found a plausible allegation that a defendant's advertising claims were misleading despite being technically true. In *Smajlaj*, plaintiffs brought a NJCFA claim based on Campbell Soup Co.'s labeling of its 25% Less Sodium soup, alleging that this 25% Less Sodium tomato soup contained the same amount of sodium as the regular tomato soup. 782 F. Supp.2d at 90. Plaintiffs in *Smajlaj* alleged that the 25% Less Sodium soup's label compared it to Campbell's "Regular Product." *Id.* Campbell's argued that this label was literally true as "Regular Product" referred to an average its condensed

soups instead of its then current regular tomato soup. *Id.* at 98. The court denied Campbell's motion to dismiss, finding that plaintiffs asserted a plausible claim that the label would mislead customers into thinking that the 25% Less Sodium tomato soup contained 25% less sodium than the regular tomato soup. *Id.* at 98-99.

Plaintiffs here have not demonstrated that Nestle has misled customers in a similar way. Plaintiffs' experts, if believed by a reasonable jury, demonstrate that Nestle's scientific substantiation for its product claims is not strongly substantiated. However, this does not establish a trial issue of fact that Nestle's "clinically shown" advertising claim is false or misleading. Plaintiffs fail to demonstrate that any customers were misled into believing that Nestle possessed a clinical showing for the immunity-related health benefits of the probiotic in BKE when it did not. The named Plaintiffs did not track their children's' illnesses, or lack thereof, and no reasonable jury could find on the basis of these facts that they were misled into believing that this grocery store drink would immunize their children against colds or other childhood maladies. As such, Plaintiffs have failed to satisfy their burden at summary judgment to demonstrate that a triable issue of fact exists as to the first element of its consumer fraud claims: unlawful conduct in the form of a false, misleading, or deceptive advertising claim. Accordingly, it is not necessary for the Court to address the parties' arguments as to the other elements of Plaintiffs' consumer fraud claims and Nestle's motion for summary judgment will be granted as to the New Jersey and California consumer fraud claims (Counts I, IV, V, and VI).

**B.     UTPCPL — "The Law of the Case" Doctrine**

In the original class action complaint, Plaintiff Scheuerman, a Pennsylvania resident, asserted a consumer fraud claim against Nestle only under the NJCFA. In its motion to dismiss that complaint, Nestle argued that Pennsylvania law should govern Scheuerman's claim and,

18

therefore, his NJCFA claim should be dismissed. In the August 1 Order, the Court held that

Scheuerman had sufficiently "plead [sic] his consumer fraud claim under the relevant New

Jersey statute" and that "New Jersey is the forum with the most significant relationship to his

claim" based on his allegations that he purchased BKE in and was defrauded by Nestle in New

Jersey. August 1 Order at 9. The Court noted that "[a]s the case progresses, it will be

[Scheuerman's] burden to prove that he was a consumer of BKE in New Jersey." *Id.* The Court

added, in a footnote: "[b]ecause Scheuerman lives in Pennsylvania and purchase [sic] BKE there,

Nestle is entitled to test the proofs behind Scheuerman's claim that he is a New Jersey consumer.

If these proofs do not appear to be sufficient, Nestle may renew its application to apply

Pennsylvania law to Scheuerman's claims in an appropriately timed summary judgment motion."

*Id.* at 9 n.10.

According to Nestle, the Court rejected its argument that Pennsylvania law applies to

Scheuerman's consumer fraud claim and accepted Scheuerman's argument that New Jersey law

applies instead. Therefore, Nestle argues, the "law of the case" doctrine provides that New

Jersey law will be applied to Scheuerman's consumer fraud claim and his newly added UTPCPL

claim should be dismissed.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case.'"

*Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) (quoting *United States v. Lopez*, 514

U.S. 549, 558 (1995)). This Court's August 1, 2011 choice of law ruling that New Jersey law

applies to Scheuerman's consumer fraud claim is the law of the case. *See In re Mercedes Benz*

*Tele-Aid Contract Litig.*, 267 F.R.D. 113, 138 n.8 (rejecting defendant's argument that the court

erred in its choice of law ruling, finding that "the Court's ruling that New Jersey law would

19

apply to the claims asserted by Plaintiffs from California and New York remains the law of the case"). In the August 1 Order, the Court considered whether New Jersey or Pennsylvania law applies to Scheuerman's consumer fraud claim in which he alleged that he purchased BKE in both Pennsylvania and New Jersey. The Court determined that "New Jersey is the forum with the most significant relationship to [Scheuerman's] claim." August 1 Order at 9. Therefore, New Jersey law will apply and Plaintiff Scheuerman's UTPCPL claim will be dismissed.

### C.   Negligent Misrepresentation and Breach of Express Warranty

In order to prevail on their negligent misrepresentation claim, Plaintiffs must plead and prove that Nestle negligently made a false statement upon which Plaintiffs justifiably relied to their detriment. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 529 (D.N.J. 2000); *Small v. Fritz Cos.*, 30 Cal. 4th 167, 174 (2003); *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). The Court will grant Nestle's summary judgment motion as to the negligent misrepresentation as Plaintiffs have failed to demonstrate the existence of a triable issue of fact as to the falsity of Nestle's advertising claims, for the reasons stated above.

With respect to Nestle's motion for summary judgment on Plaintiffs' breach of express warranty claim, the Court has received deficient legal briefing from the parties. Neither in their briefs nor at oral argument have the parties adequately stated the elements of an express warranty claim as they apply to the facts of this case. The parties' devote the express warranty sections of their summary judgment briefs almost exclusively to discussions of whether Plaintiffs were required to provide Nestle with a pre-litigation notice of breach of express warranty. The parties fail to explain how the legal standard and elements to be applied to the express warranty claim differ from those to be applied to the consumer fraud claims. Accordingly, the Court will deny Nestle's motion for summary judgment as to the breach of express warranty claim.

IV.   **CONCLUSION**

For the reasons set forth above, the Court will grant Nestle's motion for summary judgment as to Plaintiffs' NJCFA (Count I), Negligent Misrepresentation (Count II), UCL (Count IV), FAL (Count V), and CLRA claims (Count VI) only.  The Court will deny Nestle's motion for summary judgment as to Plaintiffs' claim for Breach of Express Warranty (Count III). The Court will grant Nestle's motion to dismiss as to Plaintiffs' UTPCPL claim (Count VII). The Court will reserve its decision on Plaintiffs' motion for class certification at this time.

The parties shall jointly contact Magistrate Judge Shwartz within seven days of the issuance of this Opinion and accompanying Order with a proposed schedule of dates for the pretrial deadlines stayed by the Court's June 13, 2012 Order.

The Court will refer the parties to mediation on the Breach of Express Warranty claim (Count III).  The parties will have an opportunity to submit a list of three mediators on consent. If the parties cannot agree on a list, the Court will choose a mediator from the list of Court-designated mediators.  None of the deadlines set by Judge Shwartz will be stayed as a result of the reference to mediation.  An appropriate Order follows.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.